UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELISSA DOLAN-WEISS,

                              **Plaintiff,**

           v.                                            1:21-CV-533
                                                                 (FJS/DJS)

BRIAN M. WEISS, as Trustee of Michael Weiss
Trust No. 1 of 2018; and MICHAEL WEISS TRUST
NO. 1 OF 2018,

                              **Defendants.**
_____

**APPEARANCES**                                           **OF COUNSEL**

**YANKWITT LLP**                             **DANIEL S. ALTER, ESQ.**
140 Grand Street                             **RUSSELL M. YANKWITT, ESQ.**
Suite 705
White Plains, New York 10602
Attorneys for Plaintiff

**THE TOWNE LAW FIRM, P.C.**          **JAMES T. TOWNE, JR., ESQ.**
450 New Karner Road
P.O. Box 15072
Albany, New York 12205
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

      On May 7, 2021, Plaintiff filed her complaint in this action against Defendants Brian M.

Weiss, in his capacity as Trustee of the Michael Weiss Trust No. 1 of 2018, and the Michael

Weiss Trust No. 1 of 2018 (collectively "Defendants"), pursuant to New York law for a money

judgment and the imposition of a constructive trust. *See* Dkt. No. 1, Complaint, at ¶ 1. The

Court has jurisdiction over this action based on the diversity of citizenship of the parties. *See id.* at ¶¶ 3-4.

According to the Complaint, Plaintiff and Michael Weiss ("Michael"), who is deceased, were married on July 12, 2003. *See id.* at ¶ 9. Both Plaintiff and Michael had been previously married for many years and had adult children from their prior marriages. *See id.* Following their marriage, Plaintiff and Michael lived together in the Marital Home, which Michael had owned before he and Plaintiff were married and to which he held legal title solely in his name. *See id.* at ¶ 10.

On July 14, 2014, Plaintiff and Michael executed a post-nuptial agreement ("Nuptial Agreement"), which purported to "'settle all of the issues of the real property, personal property, and [sic] business interests, spousal maintenance, as well as all other issues that might arise if their marriage should end in divorce or annulment and/or should the parties be living separate and apart and/or should they be residing in separate residences.'" *See id.* at ¶ 11 (quoting Exhibit "A" attached thereto). The Nuptial Agreement also purported to waive Plaintiff's substantial statutory rights to spousal inheritance under New York law. *See id.* at ¶ 12.

With regard to the Marital Home, the Nuptial Agreement specifically provided as follows:

> It is the intent of the parties that this residence will be the residence of the parties when they are married. The property is encumbered with a mortgage in the approximate amount of $114,000.00 held by National Union Bank of Kinderhook. It is anticipated that, after the marriage of the parties, mortgage payments shall be made from marital funds as defined in [New York] Domestic Relations Law Section 236B. The parties, from time to time, may repair, maintain, or improve said residence, during the term of the marriage with marital funds as defined in Domestic Relations Law Section 236B. Notwithstanding any such mortgage payments, repairs, maintenance or improvements, in the event of divorce or annulment and or should the parties be living separate and apart

> and/or should they be residing in separate residences or dissolution of marriage, each party shall be entitled to a one-half (1/2) share thereof, except to the extent that either party contributes any sums otherwise deemed to be separate (under the terms of this Agreement) to the purchase of or acquisition of said property, in which event said party shall be entitled to a credit of the amount contributed prior to the equal distribution of equity.

*See* Complaint, Exhibit "A," Nuptial Agreement at ¶ 6(q); Complaint at ¶ 13.

Plaintiff further alleges that she is a high school graduate with no legal training and that,

> [a]lthough the Nuptial Agreement states that [she] "had the opportunity and has consulted at length with her attorney, selected solely at her discretion . . . regarding all of the circumstances hereof and acknowledges that this Agreement has not been the result of any fraud, duress or undue influence exercised upon her by Michael;" that the Agreement was "achieved after full disclosure and with legal representation;" that her counsel "duly apprised [*sic*] of [her] . . . legal rights," and that any of her questions about the agreement were "full [*sic*] and satisfactorily explained to [her] by counsel of [her] own choice," those statements are not true.

*See* Complaint at ¶¶ 14-15 (quoting Nuptial Agreement).

Moreover, Plaintiff asserts that her counsel regarding the Nuptial Agreement was Michael's close friend, whom Michael alone arranged to represent her. *See id.* at ¶ 16. Plaintiff also contends that she was neither consulted nor had any say in the matter. *See id.* In fact, Plaintiff alleges that the person who represented her simply gave her the Nuptial Agreement and recommended that she sign it, and she had no opportunity to review it or to discuss its terms with counsel. *See id.*

Fourteen years later, on September 10, 2018, Michael created Defendant Trust by executing a trust agreement as the sole grantor. *See id.* at ¶ 17 & Exhibit "B" attached thereto. After creating the Trust, Michael simultaneously conveyed ownership of the Marital Home to it. *See* Complaint at ¶ 18. Brian, one of Michael's sons from his previous marriage, was appointed

the sole trustee. *See id.* at ¶ 19. On September 26, 2018, Brian agreed to serve as trustee for the Trust, acknowledged the Trust's receipt of the Marital Home, and agreed to hold the Marital Home in accordance with the terms of the Trust. *See id.* at ¶ 20. Under the terms of the Trust, Plaintiff "shall be permitted to reside at [the Marital Home] for a period of six months following [Michael's] death, but no longer, provided she pays all utility costs and ordinary repairs and maintenance of the residence during such period." *See id.* at ¶ 21.

Plaintiff alleges that, prior to Michael's death, no one informed her of the Trust's existence or the stark and unkind limitations period upon her right to live in the Marital Home after Michael's death. *See id.* at ¶ 22. In fact, Plaintiff contends that she did not learn about any of these unilateral and critical changes to her life until after Michael died. *See id.*

Plaintiff claims that, in 2019, Michael was diagnosed with cancer; and, for more than seven months, she cared for him in the Marital Home until he died on November 29, 2019. *See id.* at ¶¶ 23-24. Following Michael's death, Plaintiff was required to leave the Marital Home in accordance with the terms of the Trust; and she moved out of the Marital Home on July 10, 2020. *See id.* at ¶ 25. Subsequently, Plaintiff, through counsel, informed Brian and the Trust, that she claimed a 50% ownership interest in the Marital Home. *See id.* at ¶ 26. The Trust sought to sell the Marital Home, and Plaintiff consented to such sale on the condition that the sale proceeds would be held in escrow pending resolution of her claims. *See id.* at ¶ 27. Plaintiff believes that the Trust sold the Marital Home in December 2020 for approximately $375,000. *See id.* at ¶ 28.

Based on these allegations, Plaintiff asserts two causes of action: (1) unjust enrichment and (2) the imposition of a constructive trust. *See id.* at ¶¶ 30-59. With regard to her unjust enrichment claim, Plaintiff alleges that Michael, as her spouse, had a fiduciary duty to disclose to

her the creation, existence, and full terms of the Trust and that, by failing to inform her of the Trust, Michael breached that duty. *See id.* at ¶¶ 31-32. Furthermore, Plaintiff argues that Michael's failure to inform her of the Trust fraudulently induced her not to exercise her rights under the Nuptial Agreement to obtain her 50% interest in the Marital Home. *See id.* at ¶ 33. Plaintiff claims that, had she known about Michael's plan to transfer the Marital Home to the Trust and to require her eviction from the Marital Home six months after his death, or earlier if she did not pay all of the utility costs and ordinary repairs and maintenance of the residence during that period, she could have separated from and/or divorced Michael during his lifetime and, by doing so, she would have immediately secured her contractual interest in the Marital Home. *See id.* at ¶ 34. However, unaware of Michael's actions, Plaintiff stayed with him in the Marital Home for fourteen more months and cared for him there during the seven months of his illness. *See id.* at ¶ 35. Plaintiff asserts that Michael's fraudulent actions enabled him to transfer the full value of the Marital Home to the Trust, depriving her of her 50% interest. *See id.* at ¶ 36. Finally, she contends that, as a result of Michael's misconduct, the Trust was unjustly enriched in the amount of Plaintiff's interest in the Marital Home. *See id.* at ¶ 37.

With regard to Plaintiff's second cause of action for imposition of a constructive trust, she argues that Michael's fiduciary breach and fraudulent omissions, and the resulting unjust enrichment of the Trust, require that the Court impose a constructive trust on the Trust for her benefit. *See id.* at ¶ 39.

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 9.

## II. DISCUSSION

### A. Legal standard for motion to dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted). Moreover, although generally the court must limit its analysis to the four corners of the complaint when deciding a motion to dismiss, the court may consider documents attached to the complaint as exhibits or any documents incorporated by reference or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (quotation and other citation omitted). A document is integral to the complaint "where the complaint 'relies heavily upon its terms and effect[.]'" *Id.* (quoting *Audiotext,* 62 F.3d at 72).[1]

However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted). As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955). Finally, a court should grant a motion to dismiss only if "'it appears beyond doubt . . . that the plaintiff can prove no set of facts that would entitle [her] to relief.'" *Sec. Inv. Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 68 (2d Cir. 2000) (quotation omitted).

---

[1] In this case, Plaintiff attached the Nuptial Agreement and Statements of Assets, Liabilities and Net Worth (Dkt. No. 1-1, Exhibit "A") and the Trust Agreement (Dkt. No. 1-2, Exhibit "B") to her Complaint. *See* Complaint and Exhibits "A" and "B" attached thereto.

**B.    Plaintiff's claim of unjust enrichment and for relief in the form of imposition of a constructive trust**

   *1. Legal standards*

"A plaintiff must plead three elements to establish an unjust enrichment claim: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) that equity and good conscience require the defendant to make restitution." *Scism v. Ethicon, Inc.*, No. 1:19-CV-1543, 2020 WL 1245349, *8 (N.D.N.Y. Mar. 16, 2020) (Hurd, J.) (citing *Goldemberg v. Johnson & Johnson Cons. Cos., Inc.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014)).  "Unjust enrichment is available 'only in unusual situations when, though the defendant has not . . . committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).  Put another way, "'[t]ypical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled.'" *Id.* (quotation omitted).

"A constructive trust is an equitable remedy, the primary purpose of which is to prevent unjust enrichment[.]" *Matter of Estate of George*, 194 A.D.3d 1290, 1292 (3d Dep't 2021) (citations omitted).  "The imposition of such a trust is warranted '"when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[.]"'" *Id.* at 1293 (quotation omitted).  In other words, "'"[a] constructive trust is the formula through which the conscience of equity finds expression.  When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him [or her] into a trustee[.]"'" *Bekas v. Valiotis*, 143 N.Y.S.3d 94, 96 (2d Dep't 2021) (quotation and other citation omitted).  "'"The elements of a constructive trust are (1) a fiduciary or confidential relationship; (2) an express or implied

promise; (3) a transfer in reliance on the promise; and (4) unjust enrichment[.]"" *Id.* at 97 (quotation omitted).

### 2. *Unjust enrichment claim*

Even accepting Plaintiff's factual allegations in her complaint as true and drawing all reasonable inferences from those factual allegations in the light most favorable to her, the Court finds that she has not alleged sufficient facts to state a plausible claim for unjust enrichment for the following reasons.

First, there is no dispute that, at the time of Michael's death, Defendant Trust, and, therefore, the beneficiaries of Defendant Trust benefitted from the Trust, which Michael established in 2018 and into which he simultaneously transferred the Marital Home. However, they did not do so at Plaintiff's expense because, at the time of Michael's death, Plaintiff had no right to the Marital Home, which, under the terms of the Nuptial Agreement, remained Michael's separate property to do with as he saw fit.[2]

Second, Plaintiff points to nothing in the Nuptial Agreement that prevented her or Michael from disposing of their separate property, as that term was defined in the Nuptial Agreement, at any time with or without the other's approval, with the exception of the Marital Home, which under certain conditions, which did not occur, would have converted the Marital Home from Michael's separate property to the separate joint property of Plaintiff and Michael.

---

[2] The Court notes that Plaintiff affirmatively stated in her opposition to Defendants' motion that she was not challenging the validity of the Nuptial Agreement or the Trust. *See* Dkt. No. 10 at 5 (stating that "Plaintiff does not challenge the Nuptial Agreement or the Trust [and that t]o the contrary, her entire action is premised on the assumption that both instruments are enforceable").

Third, the Court finds that, because Plaintiff has not alleged sufficient facts to demonstrate that Defendants benefitted at Plaintiff's expense, she cannot alleged sufficient facts to establish that equity and good conscience require that they make restitution.

### *3. Imposition of a constructive trust*

The Court finds that, because Plaintiff has not alleged sufficient facts to plead a plausible claim of unjust enrichment, she cannot satisfy the elements necessary for the imposition of a constructive trust. In this regard, Plaintiff alleges that she and Michael, as wife and husband, had a fiduciary relationship, which required Michael to inform her that he had established a Trust to which he had transferred the Marital Home. Even if the Court accepts this allegation as true,[3] Plaintiff has failed to meet the other requirements for imposition of a constructive trust. She does not allege that Michael had promised her, either explicitly or implicitly, that, if she signed the Nuptial Agreement and they were still married and living in the same residence at the time of his death, he would bequeath the Marital Home, which would under such circumstances still be his separate property, to her. Nor does she allege that Michael promised her that he would not establish a trust or make any decisions about any of his separate property without telling her that he planned to do so or that she made any such promise to Michael. Finally, the only "promise" regarding the Marital Home that Michael made to Plaintiff in the Nuptial Agreement was that,

> in the event of divorce or annulment and or should the parties be living separate and apart and/or should they be residing in separate residences, said residence shall become the jointly owned separate

---

[3] Although there is no doubt that, as husband and wife, Michael and Plaintiff had a fiduciary relationship to each other, under the facts of this case, that does not mean that Michael had an obligation to inform Plaintiff that he was establishing a Trust and transferring the Marital Home into that Trust, in light of the fact that, under the terms of the Nuptial Agreement, the parties had agreed that the Marital Home was Michael's separate property and would remain his separate property, unless certain events occurred, which they did not.

> property of the parties, and upon divorce, separation, separate residence or dissolution of marriage, each party shall be entitled to a one-half (1/2) share thereof, except to the extent that either party contributes any sums otherwise deemed separate (under the terms of this Agreement) to the purchase of or acquisition of said property, in which event said party shall be entitled to a credit of the amount contributed prior to the equal distribution of equity.

*See* Dkt. No. 9-2, Nuptial Agreement, at ¶ 6(q).

By transferring the Marital Home to the Trust in 2018, at which time the Marital Home was his separate property under the terms of the Nuptial Agreement, the validity of which, as noted, Plaintiff does not challenge, Michael did not renege on that promise. Moreover, the transfer of the Marital Home to the Trust was not made in reliance on any promise that Michael made to Plaintiff not to transfer, sell or otherwise dispose of his separate property; and Plaintiff does not allege that it was.

Plaintiff attempts to circumvent this problem by alleging that, had she known about the Trust, she would have separated or lived separately from Michael prior to his death and then she would have been entitled to a 50% interest in the Marital Home under the terms of the Nuptial Agreement. The problem with this argument is that, even after Michael had established the Trust and transferred the Marital Home to the Trust, Plaintiff could have divorced, separated from, or lived separately from Michael at any time prior to his death and received the benefit to which she was entitled under the Nuptial Agreement, *i.e.*, at 50% interest in the Marital Home. Moreover, she does not allege that there was anything in the Trust that prevented her from taking such action.

Under the terms of the Trust, during Michael's life,

> [t]he Trustee shall hold, manage, invest, and reinvest the Trust property, and shall collect and receive the income thereof, if any, and after deducting all and necessary expenditures incident to the administration of the Trust, including the payment of all legal fees

> incident to the establishment of this Trust shall pay or apply the net income of the Trust, if any, to or for the benefit of the Grantor [Michael], during his lifetime, in at least quarterly installments.

*See* Dkt. No. 9-3, Trust Agreement, at ¶ 3(a).

It was only upon Michael's death that "the corpus of this Trust **as it shall then exist**, including all undistributed income," was to be distributed, in pertinent part, as follows:

> [The Marital Home] shall be sold and the net proceeds of the sale shall be distributed to those of the Grantor's children . . . who survive him, and to the issue who survive him of those of the Grantor's children who predecease him, by representation. Said property shall be listed for sale by the Trustee no sooner than three (3) months after the death of the Grantor and the subsequent sale of said property shall take place no sooner than six (6) months after the death of the Grantor. The Grantor's wife, Melissa A. Dolan-Weiss, shall be permitted to reside at said residence for a period of six months following the Grantor's death, but no longer, provided she pays all utility costs and ordinary repairs and maintenance of the residence during such period. This Trust shall pay the applicable real estate taxes, insurance premiums and the debt service accruing during the period.

*See* Dkt. No. 9-3, Trust Agreement, at 3(b)(i) (emphasis added).

When the terms of the Trust Agreement and the Nuptial Agreement, *see* Dkt. No. 9-2, Nuptial Agreement, ¶ 6(q), are read in conjunction with each other, it is clear that there is nothing in the Trust Agreement that affected Plaintiff's rights to the Marital Home under the terms of the Nuptial Agreement. Thus, with or without the establishment of the Trust, prior to Michael's death, had Plaintiff and Michael divorced, separated, or had their marriage been annulled, or had they been living separate and apart and/or residing in separate residences, the Marital Home would have become the jointly owned separate property of Michael and Plaintiff, and upon their divorce, separation, separate residences or dissolution of their marriage each of them would have been entitled to a one-half share of the Marital Home. If any of those

conditions had been met prior to Michael's death, which they were not, then, at the time of his death, the corpus of the Trust, would have included only Michael's one-half share of the Marital Home (rather than 100% share of the Marital Home); and, at the time of Michael's death, that 1/2 share would have been distributed in accordance with the terms of the Trust.

Accordingly, for all of the above-stated reasons, the Court finds that Plaintiff has not alleged sufficient facts to state a plausible claim that the Trust Defendants were unjustly enriched at her expense and, as such, her request for relief in the form of a constructive trust fails.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see* Dkt. No. 9, is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: March 29, 2022
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge